## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MOUNT VERNON FIRE | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-11-3785 |
| | § | |
| SAM BOYD, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This insurance coverage dispute is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 17] filed by Plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon"), to which Defendant Sam Boyd filed a Response [Doc. # 18], Plaintiff filed a Reply [Doc. # 19], and Defendant filed a Sur-Reply [Doc. # 20]. Having reviewed the full record and applied governing legal authorities, the Court **grants** Mount Vernon's Motion as to the duty to defend and **denies** without prejudice the Motion as to the duty to indemnify.

## I.    BACKGROUND

Mount Vernon issued a Commercial General Liability insurance policy to Sam Boyd Development Inc. (the "Policy"). The parties do not dispute that Defendant Sam Boyd is an insured under the Policy. The term of the Policy is April 28, 2009 to

P:\ORDERS\11-2011\3785MSJ.wpd

April 28, 2010.  The Policy covers property damage that is caused by an occurrence and that occurs during the policy period.

On December 31, 2009, Ernest Randall filed a Fifth Amended Petition (Exhibit B to Motion) in Texas state court against Boyd and others (the "Underlying Lawsuit"). Randall alleges that Boyd offered to buy his property or to pay to use a shared lake on the property as a detention/amenity pond for a residential subdivision called Hidden Lakes that Boyd was developing.  Randall declined Boyd's offer.  Randall alleges that Boyd began draining the shared lake on March 18, 2008, thereby damaging Randall's use and enjoyment of the shared lake.  Randall alleges also that persons acting on Boyd's behalf came onto Randall's property and removed large amounts of earth and soil and moved it to the property then owned by Boyd.  Randall alleges further that Boyd and others "have made and continue to make unauthorized use of [Randall's] property for storage and detention of backwater that benefits the entire Hidden Lakes development."  *See* Underlying Lawsuit, Exh. B to Motion, ¶ 17.  Randall alleges that Boyd's property was sold at a foreclosure sale in March 2009.  The Underlying Lawsuit was settled pursuant to a written Settlement Agreement filed in the Underlying Lawsuit in January 2011.

Mount Vernon filed this lawsuit seeking a declaratory judgment that it does not owe Boyd a duty to defend the Underlying Lawsuit or a duty to indemnify Boyd for

the amount he paid in settlement.  Mount Vernon then filed its Motion for Summary

Judgment, which has been fully briefed and is ripe for decision.

## II.   **APPLICABLE LEGAL STANDARDS**

### A.   **Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should

be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*,

477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

### B.   **Standards for Construction of Insurance Policy**

Under Texas law, the meaning of an insurance contract is to be determined

under the standards applicable to contracts generally.  *See One Beacon Ins. Co. v.*

*Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011); *Mid-Continent Cas. Co.*

*v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir.  2000); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  A court's primary concern is to give effect to the intention of the parties as expressed by the policy language. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983)).

"If the contract is worded so that it can be given a definite meaning, it is unambiguous and a judge must construe it as a matter of law." *Int'l. Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).  A contract is ambiguous only "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).  "The fact that the parties disagree as to coverage does not create an ambiguity." *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).  The determination of whether a contract is ambiguous is a question of law. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998)).  Only if the contract is subject to more than one reasonable interpretation will

it be deemed ambiguous and interpreted in favor of coverage for the insured. *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App. – Tyler 2003, no pet.) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)); *see also Mid-Continent*, 206 F.3d at 491.

The insured bears the burden of establishing that the claim against it is potentially within the policy's coverage. *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *Nat'l Fire Ins. Co. v. Radiology Assocs., L.L.P.*, 439 F. App'x 293, 295 (5th Cir. Aug. 8, 2011).  The insurer, however, has the burden to show that an exclusion in the policy applies to negate coverage. *See Nat'l Cas. Co. v. Western World Ins. Co.*, 669 F.3d 608, 615 (5th Cir. 2012).

## III.   DUTY TO DEFEND

### A.   Legal Standard

An insurer owes its insured a duty to defend "if a plaintiff's factual allegations potentially support a covered claim." *Zurich Amer. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex. 2006)).  In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined by the plaintiff's pleadings in the underlying lawsuit. *Id.* at 491.  The focus is on the factual allegations in the underlying complaint, not on the

legal theories.  *See id.* at 495 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).  Although courts are generally limited to the factual allegations in the pleadings and the terms of the policy when deciding whether the insurer owes its insured a duty to defend, courts may also consider reasonable inferences that may be drawn from the factual allegations in the pleadings.  *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005); *Gen. Star Indem. Co. v. Gulf Coast Marine Assoc., Inc.*, 252 S.W.3d 450, 456 (Tex. App. – Houston [14th Dist.] 2008, review denied) (noting that the "eight corners rule does not require us to ignore those inferences logically flowing from the facts alleged in the petition").

The Court is required to "resolve all doubts regarding the duty to defend in favor of the duty" and to "construe the pleadings liberally."  *Zurich*, 268 S.W.3d at 491.  "If a complaint potentially includes a covered claim, the insurer must defend the entire suit."  *Id.*  If the complaint in the underlying lawsuit clearly alleges only facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).  If, however, it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the

coverage of the policy." *See Zurich*, 268 S.W.3d at 491; *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). "The duty to defend is not affected by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit." *Zurich*, 268 S.W.3d at 491 (citing *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 829 (Tex. 1997)).

### B.   <u>Coverage</u>

The Policy covers "property damage" that (1) is caused by an "occurrence" and (2) occurs during the policy period. Additionally, the Policy covers property damage only if, prior to the policy period, no insured "knew that the 'property damage' had occurred in whole or in part." *See* Policy, Exh. A to Motion, p. 1. "Property damage" is defined under the Policy as "physical injury to tangible property, including all resulting loss of use of that property." *See id.* at 15. Where there is physical injury to the property, all loss of use is "deemed to occur at the time of the physical injury that caused it."[1] *See id.* "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* at 14.

---

[1]     Boyd's reliance on *OneBeacon Ins. Co. v. Don's Building Supply, Inc.*, is misplaced. That case involved an occurrence-based commercial general liability insurance policy that did not define when property damage occurred for purposes of coverage under the policy. *See OneBeacon*, 553 F.3d 901, 902 (5th Cir. 2008). In this case, however, the Policy defines when "property damage" is deemed to have occurred.

In the Underlying Lawsuit, Randall alleges that Boyd began draining the shared lake on March 18, 2008, thereby damaging Randall's use and enjoyment of the shared lake.  March 2008 is well before the policy period.  Randall alleges also that persons acting on Boyd's behalf came onto Randall's property and removed large amounts of earth and soil and moved it to the property then owned by Boyd.  Randall alleges further that Boyd and others "have made and continue to make unauthorized use of [Randall's] property for storage and detention of backwater that benefits the entire Hidden Lakes development."  *See* Underlying Lawsuit, Exh. B to Motion, ¶ 17. Although Randall does not allege when the "large amounts of earth and soil" were removed from his property onto Boyd's property, he alleges that Boyd's property was sold at a foreclosure sale in March 2009.  Consequently, it is clear from the paragraph read as a whole that the removal of earth from Randall's property took place prior to March 2009, before the policy period began.

Boyd has not identified any allegations against him in the Underlying Lawsuit that involve an occurrence between April 28, 2009 and April 28, 2010.  Additionally, Boyd has not identified any allegations against him in the Underlying Lawsuit that involve "property damage" that occurred within the policy period.  All allegations in the Underlying Lawsuit involve conduct by Boyd prior to the policy inception date of April 28, 2009.  Indeed, Randall alleges that Boyd's property was sold in March 2009.

Absent allegations against Boyd of an occurrence that caused property damage during the policy period, as those terms are defined in the Policy, Mount Vernon owes Boyd no duty to defend.

### C.    Pre-Existing or Progressive Damage Exclusion

Even if Boyd were able to identify allegations in the Underlying Lawsuit that fall within the coverage provisions of the Policy, the duty to defend would be negated by the "Pre-Existing or Progressive Damage Exclusion" ("Progressive Damage Exclusion") in the Policy.  The Progressive Damage Exclusion excludes coverage for property damage which "first occurred, or is alleged to have first occurred, in whole or in part, prior to the inception date of this policy" or which is alleged to be "in the process of occurring, in whole or in part, prior to the inception date of this policy, even if the "occurrence" continues, changes or resumes during the policy period." *See* Policy, p. L-419.

Randall clearly alleges in the Underlying Lawsuit that his property damage first occurred, in whole or in part, prior to the April 28, 2009, inception date of the Policy, even though his alleged injury continued unabated into the policy period.  For example, Randall alleges that Boyd drained the shared lake in March 2008 "to such an extent that [Randall's] use and enjoyment of the lake was injured."  *See* Fifth Amended Petition, ¶ 15.  Randall alleges that Boyd and the other defendants "have

made and continue to make unauthorized use of [Randall's] property . . .." *Id.*, ¶ 17. These allegations implicate the Progressive Damage Exclusion and, on this basis also, there is no duty to defend Boyd in the Underlying Lawsuit.

## IV.   DUTY TO INDEMNIFY

The duty to indemnify is based on the actual facts that result in liability.  *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528-29 (5th Cir. 2004). It is possible to establish facts giving rise to a duty to indemnify even in situations in which there were not sufficient facts asserted in the underlying complaint to give rise to a duty to defend.  *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 602 n.4 (5th Cir. 2011) (citing  *D.R. Horton - Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009)).  Where liability in the underlying litigation is resolved before trial without an opportunity to develop the facts, "additional evidence – not relevant to the issue of liability but essential to coverage – may be introduced during the coverage litigation to establish or refute the duty to indemnify." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011).

In the Settlement Agreement, Randall and Boyd agree to settle "all claims and controversies between them, asserted or assertable in this case . . .." *See* Settlement Agreement, available on public website for Galveston County District Clerk's Office, ¶ 2.  Randall and Boyd state also that they "desire to compromise and settle all claims

and causes of action of any kind whatsoever which the Parties have or may have arising out of the transaction or occurrence which is the subject of this dispute." *Id.*, ¶ 3. The Settlement Agreement provides that Sam Boyd and co-defendant CTMGT will pay Randall $25,000.00.

Since the Settlement Agreement refers to claims "asserted or assertable" and to claims "of any kind whatsoever" that the parties in the Underlying Lawsuit "have or may have," it is unclear on this record for what Boyd and CTMGT are paying the $25,000.00. Additionally, it is unclear what portion, if any, of the $25,000.00 is to be paid by Boyd rather than CTMGT. As a result, the Court cannot determine on the basis of this record whether there may be a duty to indemnify Boyd.

## V.  <u>CONCLUSION AND ORDER</u>

The Underlying Lawsuit did not contain allegations of an occurrence within the policy period. Additionally, the allegations in the Underlying Lawsuit fall within the Pre-existing or Progressive Damage Exclusion. Consequently, Mount Vernon owes no duty to defend.

Because the Underlying Lawsuit has been concluded by a settlement of the dispute, there is currently an inadequate record to determine whether Boyd's liability was based on facts that would give rise to a duty to indemnify. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 17] is **GRANTED** as to the duty to defend and **DENIED WITHOUT PREJUDICE** as to the duty to indemnify.

SIGNED at Houston, Texas, this 8<u>th</u> day of **May, 2012**.

Nancy F. Atlas
United States District Judge