# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MOUNT VERNON FIRE | § | |
| INSURANCE COMPANY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-11-3785 |
| | § | |
| SAM BOYD, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This insurance coverage dispute is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 46] filed by Plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon"), seeking summary judgment that it owes Defendant Sam Boyd no duty to indemnify.[1]  Defendant filed a Response [Doc. # 47], and Plaintiff filed a Reply [Doc. # 48].  Having reviewed the full record and applied governing legal authorities, the Court **grants** Mount Vernon's Motion.

## I.   BACKGROUND

Mount Vernon issued a Commercial General Liability insurance policy to Sam Boyd Development Inc. (the "Policy").  The parties do not dispute that Defendant Sam

---

[1]  Also pending is Plaintiff's Motion to Strike Sam Boyd's Summary Judgment Evidence [Doc. # 49].  The Court **denies** the Motion to Strike and has considered Boyd's summary judgment evidence.

Boyd is an insured under the Policy.  The term of the Policy is April 28, 2009, to April 28, 2010.  The Policy covers property damage that (1) is caused by an occurrence and (2) occurs during the policy period.

On December 31, 2009, Ernest Randall filed a Fifth Amended Petition (Exhibit B to Motion) in Texas state court against Boyd and others (the "Underlying Lawsuit").  Randall alleged that Boyd offered to buy his property or to pay to use a shared lake on the property as a detention/amenity pond for a residential subdivision called Hidden Lakes that Boyd was developing.  Randall declined Boyd's offer.  Randall alleged that Boyd began draining the shared lake on March 18, 2008, thereby damaging Randall's use and enjoyment of the shared lake.  Randall alleged also that persons acting on Boyd's behalf came onto Randall's property and removed large amounts of earth and soil and moved it to the property then owned by Boyd.  Randall alleged further that Boyd and others "have made and continue to make unauthorized use of [Randall's] property for storage and detention of backwater that benefits the entire Hidden Lakes development."  *See* Underlying Lawsuit, ¶ 17.  Randall alleged that Boyd's property was sold at a foreclosure sale in March 2009.  The Underlying Lawsuit was settled pursuant to a written Settlement Agreement filed in the Underlying Lawsuit in January 2011.

Mount Vernon filed this lawsuit seeking a declaratory judgment that it does not owe Boyd a duty to defend the Underlying Lawsuit or a duty to indemnify Boyd for the amount he was required to pay in settlement. Mount Vernon then filed a Motion for Summary Judgment, which the Court granted as to the duty to defend by Memorandum and Order [Doc. # 21] entered May 8, 2012. The Court denied without prejudice the Motion for Summary Judgment as to the duty to indemnify.

Mount Vernon has renewed its Motion for Summary Judgment on the indemnity issue. The Motion has been fully briefed and is now ripe for decision.

## II.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

## III.   DUTY TO INDEMNIFY

### A.   Legal Standard

The duty to indemnify is based on the actual facts that result in liability. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528-29 (5th Cir. 2004). It is possible to establish facts giving rise to a duty to indemnify even in situations in which sufficient facts giving rise to a duty to defend were not asserted in the underlying complaint. *See Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 602 n.4 (5th Cir. 2011) (citing *D.R. Horton - Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009)). Where liability in the underlying litigation is resolved before trial without an opportunity to develop the facts, "additional evidence – not relevant to the issue of liability but essential to coverage – may be introduced during the coverage litigation to establish or refute the duty to indemnify." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011).

Boyd, as the insured, bears the burden of establishing that the claims covered by the settlement are covered by the policy. *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001). Mount Vernon, as the insurer, bears the burden of establishing that a policy exclusion applies. *Id.*

B.    Analysis

The Policy covers "property damage" that (1) is caused by an "occurrence" and (2) occurs during the policy period. The Policy covers property damage only if, prior to the policy period, no insured "knew that the 'property damage' had occurred in whole or in part." *See* Policy, Exh. A to Motion, p. 1. "Property damage" is defined under the Policy as "physical injury to tangible property, including all resulting loss of use of that property." *See id.* at 15. Where there is physical injury to the property, all loss of use is "deemed to occur at the time of the physical injury that caused it." *See id.* "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* at 14.

In the Underlying Lawsuit, Randall alleged that Boyd began draining the shared lake on March 18, 2008, thereby damaging Randall's use and enjoyment of the shared lake. March 2008 is well before the policy period.

Randall alleged also that persons acting on Boyd's behalf came onto Randall's property and removed large amounts of earth and soil and moved it to the property then owned by Boyd. Randall alleged further that Boyd and others "have made and continue to make unauthorized use of [Randall's] property for storage and detention of backwater that benefits the entire Hidden Lakes development." *See* Underlying Lawsuit, ¶ 17. Although Randall did not allege when the "large amounts of earth and

soil" were removed from his property onto Boyd's property, he alleged that Boyd's property was sold at a foreclosure sale in March 2009. Consequently, it is clear from the paragraph read as a whole that the removal of earth from Randall's property took place prior to March 2009, before the policy period began on April 28, 2009.

In the Settlement Agreement, Randall and Boyd agreed to settle "all claims and controversies between them, asserted or assertable in this case . . .." *See* Settlement Agreement, Exhibit E to Motion, ¶ 2. Randall and Boyd stated also that they "desire to compromise and settle all claims and causes of action of any kind whatsoever which the Parties have or may have *arising out of the transaction or occurrence which is the subject of this dispute*." *Id.*, ¶ 3 (emphasis added).

Boyd has not identified any claims against him in the Underlying Lawsuit that involved an occurrence during the policy period between April 28, 2009 and April 28, 2010. More importantly, Boyd has not identified any claims included in the settlement that involve "property damage" that occurred within the policy period. The Affidavit of Thomas M. Pickford, Boyd's attorney in the Underlying Lawsuit, states that the parties thereto settled "the action for property damage *caused by Boyd*." *See* Pickford Aff., Exh. A to Response, ¶ 15 (emphasis added). Because of the foreclosure, Boyd's conduct that caused the property damage to Randall must have occurred prior to the policy inception. Similarly, the Settlement Agreement provides

that Randall and Boyd are settling claims "arising out of the transaction or occurrence which is the subject of this dispute," and the subject of the dispute between Randall and Boyd involved occurrences prior to April 28, 2009.

Pickford states summarily in his Affidavit that the settlement covered "all remaining assertable claims that Ernest Randall may have had and that were not contained in any of the petitions on file with the Court" *Id.* Despite time for discovery and earlier motions setting forth Mount Vernon's claims and theories, neither Pickford nor Boyd has identified any claims, asserted or assertable, in the Underlying Lawsuit that involve an occurrence resulting in injury to tangible property during the policy period. Consequently, Boyd has not demonstrated that Mount Vernon owes him a duty to indemnify.

## IV. **CONCLUSION AND ORDER**

Boyd has failed to identify any claims either asserted or assertable in the Underlying Lawsuit that involve an occurrence within the policy period. Consequently, Mount Vernon owes no duty to indemnify, and it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment on the Duty to Indemnify [Doc. # 46] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion to Strike Sam Boyd's Summary Judgment Evidence [Doc. # 49] is **DENIED**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 24th day of **September, 2012**.

_____
Nancy F. Atlas
United States District Judge